LAW OFFICE OF JAMES CHUNG
James Chung
43-22 216th Street
Bayside, NY 11361
Telephone: (718) 461-8808
Facsimile: (929) 381-1019
*jchung_77@msn.com*

SHEEHAN & ASSOCIATES, P.C.
Spencer Sheehan
60 Cutter Mill Road, Suite 409
Great Neck, NY 11021
Telephone: (516) 303-0552
Facsimile:(516)234-7800
*spencer@spencersheehan.com*

United States District Court
Southern District of New York

| | |
|---|---|
| Jim Lyons, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>- against -<br><br><br>Royal Oak Enterprises, LLC.,<br><br><br>Defendant. | 7:21-cv-524<br><br><br><br><br>Class Action Complaint |

Plaintiff Jim Lyons ("Plaintiff" herein), individually and on behalf of all similarly situated, brings this Class Action Complaint against the Royal Oak Enterprises, LLC., ("Royal Oak" or "Defendant" herein), and on the basis of personal knowledge, information and belief, and investigation of counsels, allege as follows:

**NATURE OF THE ACTION**

1. This is a consumer class action on behalf of consumers seeking remedy for Defendant's deceptive business practice in marketing, advertising and promotion of barbeque

charcoal products.[1] (the "Product/s" herein).

2.  Consumer demand for natural healthy food products, as opposed chemical ridden and synthetic items, has been on the rise.  The demand for environmentally friendly, "clean" products has also been on the rise.

3.  Defendant is one of the companies that jumped on the bandwagon to maximize profit on the consumer demand for natural, healthy and environmentally friendly products.

4.  In so doing, Defendant falsely and misleadingly makes the following representations; 1) product composition claim by stating "100% All Natural Hardwood" 2) eco-friendly claim by stating "cleaner burn" and 3) superior product claim by stating "hotter, cleaner and starts faster."

5.  Unbeknownst to novices, people who occasionally barbeque and even many aficionados, Defendant's Product contains numerous chemicals that have an adverse effect on health.  Furthermore, Defendant's product is not made with 100% wood material as they portray it to be.  Nor can the Product be described as "clean," or "cleaner."

6.  Defendant's actions violate various New York consumer protection laws and similar deceptive and unfair trade practice laws in other states and the District of Columbia. Defendant violated statutes enacted in each of the fifty states and the District of Columbia which are designed to protect consumers against unfair, deceptive, fraudulent and unconscionable trade and business practices and false advertising.

## JURISDICTION AND VENUE

7.  This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2) (Class Action Fairness Act of 2005 or "CAFA").  The aggregate claims of all members

---

[1] Barbeque charcoals are also known as briquettes, briquet, charcoal briquet, or charcoal briquette.

of the proposed class and subclasses are in excess of $5 million, exclusive of interest and costs, and there are more than 100 putative class members, Plaintiff, as well as members of the proposed class, are citizens of a state different from Defendant.

8. Pursuant to 28 U.S.C. § 1391, this Court is the proper venue for this action because a substantial part of the events, omission, and acts giving rise to the claim occurred in this District where Defendant distributed, marketed, advertised, and sold the various charcoal products at issue throughout New York.

9. Pursuant to 28 U.S.C. § 1391(b)(2), this Court is the proper venue because Plaintiff and a substantial portion of putative class members are residents of this District and a substantial part of the acts and omissions that gave rise to this Complaint occurred or emanated from this District.

10. This Court has personal jurisdiction over Defendant because it is authorized to do business and does business in New York, has marketed, advertised and made sales in New York, and has sufficient minimum contacts with this state and/or sufficiently avails itself of the markets of this state through its promotion, sales, and marketing within this state to render the exercise of jurisdiction by this Court permissible.

**PARTIES**

11. Plaintiff is a citizen of the State of New York and resides in Dutchess County. Plaintiff was exposed to Defendant's claim by reading the labeling on the Product prior to purchase.

12. Plaintiff purchased the Product at Walmart store located at Kingston, NY during the statutory period.

13. Plaintiff purchased the product for personal use in reliance of the labeling. As a

result of the representation made by Defendant, Plaintiff expected the product to conform to the description. The product did not conform as represented on the labeling. Therefore, Plaintiff suffered injury-in-fact.

14. Had Plaintiff known the truth about the misrepresentations and omissions, he would not have purchased the Product. Instead, he may have purchased a competing product that is less expensive. Plaintiff cannot rely on the truthfulness of the Product in the future unless Defendant makes corrective changes. Plaintiff may consider future purchase if Defendant engages in corrective labeling and advertising.

15. Defendant Royal Oak Enterprises, LLC., is a limited liability company organized under the laws of Delaware with corporate address of 1 Royal Oak Avenue, Roswell, Georgia 30076, Fulton County. Upon information and belief, no member of Defendant is a citizen of New York.

16. Defendant manufactures, markets and sells the Product throughout the United States. The advertisement for the Product that was relied upon by Plaintiff was prepared and approved by Defendant and was disseminated by Defendant and its agents through misrepresented product labelling alleged herein.

17. The labelling and advertising were designed to encourage consumers to purchase the Products and misled the reasonable consumer into purchasing the Products. Defendant distributes the Products and created and/or authorized the unlawful, fraudulent, misleading, deceptive labeling and advertising for the Products.

## FACTUAL ALLEGATIONS

### A. Barbequing/Grilling

18. The word barbecue comes from the language of a Caribbean Indian tribe called the

Taino. Their word for grilling on a raised wooden grate is "barbacoa." The word first appeared in print in a Spanish explorer's account of the West Indies in 1526, according to Planet Barbecue.[2]

19. The history of barbecuing in America dates to colonial times, and it has been a part of American culture ever since. Barbequing/grilling is cooking with indirect/direct heat, in the presence of smoke.

20. Grilling is cooking food quickly over direct heat at high temperatures. Barbequing is cooking food slowly at low temperatures. The food is generally placed on a metal grid and the heat radiates to food from below.

21. The barbeque charcoal was first invented and patented by Ellsworth B. A. Zwoyer of Pennsylvania in 1897 and was produced by the Zwoyer Fuel Company.[3] The process was further popularized by Henry Ford.

22. Ford owned 313,000 acres of timberland and sawmill to provide lumber for Ford cars.[4] The mill generated tons of waste materials such as stumps, branches and sawdust. Ford and Orin Stafford (a chemist who invented a method for making pillow-shaped lumps from sawdust and mills waste), found the solution to transform the waste into "charcoal briquettes."

23. The first commercial charcoal briquet factory was designed by Thomas Edison and built by Henry Ford in 1921, according to Planet Barbecue.

### B. Defendant's Representation and Alleged Misconduct

24. Defendant manufactures, markets and sells different varieties of barbeque charcoal products.

25. One product being marketed and sold by Defendant is a "100 % All Natural

---

[2] Melina, Remy, *What's the History of the Barbecue?*, Livescience.com, July 26, 2010.
[3] Unnamed Author, *Charcoal Briquettes – History – Types and Benefits*, Charkiln.com, 11/11/2012, see http://charcoalkiln.com/charcoal-briquettes-history-types-benefit/
[4] Mortensen, Jens, *Who Made That Charcoal Briquette?*, The New York Times Magazine, Sept. 26, 2014.

Hardwood Briquet." The Product sells for about $ 8 for a 16 pound bag. See illustration below.




26. Initially, Defendant wrongfully makes a claim that its Product is comprised of "100 % All Natural" materials. As such, Defendant is making a false composition claim in an attempt to deceive the consumers into perceiving the Product to be composed of 100 % natural hardwood.

27. Defendant further advances the "100 % Hardwood" claim by using a non-English word "briquet." A briquet is a French word for "briquette." A dictionary defines "briquette" as a small block of compressed coal dust or charcoal used for fuel" or "a molded block of any material."

28. The composition of the Product is not 100 % natural hardwood. Rather, "100 % Natural Hardwood" is comprised of coal, limestone, borax, nitrates, in addition to wood scraps.

29. Typically, conventional charcoal briquettes suitable for use as the barbeque charcoal is comprised of about 40 percent by weight of charcoal, 20 percent limestone, 10 percent

6

starch and 30 percent of either lignite or anthracite coal. The barbeque charcoal may also include about 2 percent of nitrate, e.g., sodium nitrate or potassium nitrate, as an oxidizer and about 0.5 percent of borax as a slicking agent.[5]

30. Coal is a petroleum product formed by compaction and hardening of plant remains, water and dirt over millions of years. Heat and pressure produce chemical and physical changes in the plant layers which force out oxygen and leave carbon deposits. Eventually, plant materials transform to coal.[6] Anthracite coal is a coal of hard variety that contains pure carbon and burns with little flame or smoke. Lignite is another variety of coal found in sedimentary rock formed from naturally compressed peat.

31. Starch is a white, granular, organic chemical that is produced by all green plants. Starch is a soft, white, tasteless powder that is insoluble in cold water, alcohol, or other solvents.[7] Since starch is insoluble, it is used as bonding agent in charcoal, to hold the particles together.

32. Limestone is a sedimentary rock composed primarily of calcium carbonate (CaCO3) in the form of the mineral calcite. It most commonly forms in clear, warm, shallow marine waters. It is usually an organic sedimentary rock that forms from the accumulation of shell, coral, algal, and fecal debris.[8] Limestone in charcoal briquette is used to turn ashes white after burning out.

33. Sodium nitrate is a kind of salt that has long been used to preserve foods. Sodium nitrate is a strong oxidizer and is used in a variety of industrial and food processes. For example, it is commonly added to charcoal briquettes to make them easier to light. Borax is an agent that

---

[5] https://patents.google.com/patent/EP0720429A4/en
[6] Unnamed Author, *How is coal formed?,* Kentucky Coal Education, undated article.
[7] https://www.britannica.com/science/starch
[8] https://geology.com/rocks/limestone.shtml#:~:text=Limestone%20is%20a%20sedimentary%20rock,%2C%20algal%2C%20and%20fecal%20debris.

makes charcoal flat, smooth and glossy.

34. Therefore, Defendant's claim that the Product is "100 % All Natural Hardwood" is false and misleading. The Product is mislabeled and misbranded.

35. Even, *arguendo*, Defendant's product is composed of "100 % All Natural Hardwood," that characterization has no place in charcoal promotion. The claim is more fitting for advertisement in food products.

36. Defendant also makes an eco-friendly and health-based claim by stating that the Product has "Cleaner Burn." The claims cannot be substantiated.

37. Propane gas which is favored by most majority of consumers is considered the cleanest source of fuel for barbeques. Gas grill release about 5.3 pounds of carbon dioxide per hour of cooking. In contrast, the barbeque charcoal emits about 11 pounds of carbon dioxide into the environment per one hour of cooking.[9]

38. Lump charcoal, which is made by burning pieces of wood, also emits less carbon dioxide into the air. Thus, Defendant's Product is less eco-friendly compared to other source of barbeque fuels.

39. Cooking with propane gas is also considered healthier than cooking with charcoals. The studies performed by the researchers indicate that charcoal-grilled meats contain more carcinogens than cooking with propane gas.[10]

40. The grilling of meat can form two kinds of potentially carcinogenic compounds in the cooked meat: polycyclic aromatic hydrocarbons (PAHs) and heterocyclic amines (HCAs).[11] The charcoal cooked food contains more carcinogens because the charcoal emits more smoke and

---

[9] Zhang, Emily, *How to throw a more climate-friendly BBQ*, Stone Pier Press, June 2019.
[10] Unknown Author, *What's the Healthiest Grill*, Men's Health, June 2015.
[11] EPA & CDC, *Polycyclic Aromatic Hydrocarbons Fact Sheet*, November 2009.

the flames are hotter than the propane gas fueled barbeque.

41. The increase in smoke and hotter flames tend to char foods during the cooking process. In sum, Defendant's cleaner burn claim is false, misleading and unsubstantiated.

42. The "Hotter" and "Starts Faster" claims are also misleading because it does not provide any reference point. For instance, the competing brands can potentially burn hotter and start faster than Defendant's Product.

43. In contrast to the mislabeled and misbranded product, Defendant manufactures, markets and sells properly labeled products. See illustration below.




44. The mesquite and hickory charcoal products do not claim to be eco-friendly, do not contain composition claims nor profess to be superior to competing products.

C. **Defendant's Conduct and Omission Have Damaged Plaintiff and Members of the Class**

45. Plaintiff and members of the proposed class have been damaged by Defendant's conduct and/or omission.

46. As a result of Defendant's conduct and omission, Plaintiff and the putative class have purchased the Products that do not conform as promised. They were deprived of the benefit

of the bargain and suffered monetary loss.

47. Defendant's mislabeling of the Products is adjudged by whether it would deceive reasonable person.

48. Reasonable consumers do not expect false and unsubstantiated claims on the packaging which makes Defendant's representation deceptive and misleading.

49. Plaintiff and the Class lack the ability to test or verify Defendant's claims at the point of sale. Consumers would not know the true nature of the labeling merely by reading the labels nor are they expected to know.

50. Furthermore, the reasonable consumer is not expected to scrutinize the labeling and quash Defendant's prominent claim and warranties that are being made on the product.

51. Defendant did not disclose the composition of the Products. Plaintiff and the Class relied on label representation and information in making the decision to purchase the Product.

52. The placement of the "All Natural," "Hotter & Cleaner Burn," and "100 % All Natural Hardwood Briquets" prominently on the front panel evinces Defendant's awareness that those claims are material to consumers.

53. The product is worth less than bargained for. Plaintiff and the Class paid a price premium for the Products.

54. Plaintiff and the Class did not obtain the full value of the Product due to Defendant's misrepresentations and omission.

55. Plaintiff brings this action to prevent Defendant from further deceptive business practice and to obtain redress for those who have purchased the Products.

## CLASS ACTION ALLEGATIONS

56. Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(a),

23(b)(2) and/or 23(b)(3) ("the Class").

57. The proposed class consists of: All persons who purchased one or more Defendant's Products in the United States and its territories or possessions sold by Defendant.

58. Plaintiff also brings this suit on behalf of sub-classes consisting of purchasers of the Products in New York during the proposed class period.

59. The members of the class are so numerous that joinder is impracticable.

60. Plaintiff's claims are typical of the claims of the entire class.

61. Plaintiff will fairly and adequately represent and protect the interests of the other class members for purposes of Federal Rule of Civil Procedure 23(a)(4).

62. Plaintiff has no interests antagonistic to those of other class members.

63. Plaintiff is committed to the vigorous prosecution of this action and has retained counsel experienced in class action litigation.

64. Class certification is appropriate under Federal Rule of Civil Procedure 23(b)(3) because common questions of law and fact exist as to all members of the class and predominate over any questions affecting only individual members of the class.

65. Class certification under Federal Rule of Civil Procedure 23(b)(3) is superior to other available methods for the fair and efficient adjudication of this controversy.

66. Since the damages suffered by individual class members may be relatively small, the expense and burden of individual litigation make it virtually impossible for the class members to seek redress for the wrongful conduct alleged.

67. Plaintiff knows of no difficulty which will be encountered in the management of this litigation which would preclude its maintenance as a class action.

68. Class members have suffered and will suffer irreparable harm and damages as a

result of Defendant's wrongful conduct.

## CAUSES OF ACTION

## COUNT I

## VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW §§ 349 & 350

## (DECEPTIVE AND UNFAIR TRADE PRACTICES ACT)-New York Subclass

69. Plaintiff incorporates by reference all preceding paragraphs.

70. Plaintiff brings this claim on behalf of himself and the other members of the Class for violations of New York's Deceptive Acts or Practices Law, Gen. Bus. Law §§ 349 & 350.

71. Defendant's business acts and practices and/or omissions alleged herein constitute deceptive acts or practices under NY GBL §§ 349 & 350 which were enacted to protect the consuming public from those who engage in unconscionable, deceptive or unfair acts or practices in the conduct of any business, trade or commerce including advertising.

72. NY GBL § 349 provides that deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are unlawful. NY GBL § 350 prohibit false advertising. Section 350 prohibits "false advertising in the conduct of any business, trade or commerce or in the furnishing of any service in [the State of New York]." New York GBL section 350-a defines "false advertising" as "advertising, including labeling, of a commodity, or of the kind, character, terms or conditions of any employment opportunity if such advertising is misleading in a material respect."

73. The practices of Defendant described throughout this Complaint were specifically directed to consumers.

74. Defendant's conduct is malicious, willful, wanton and outrageous such as to shock the conscience of the public and warrant imposition of punitive damages.

75. Defendant's actions impact the public at large because Plaintiff and members of the Class were injured in exactly the same way as thousands of others purchasing the Products as a result of Defendant's deceptive conduct.

76. By committing the acts alleged in this Complaint, Defendant has materially misled Plaintiff and the Class into purchasing the Products, in part or in whole, due to an erroneous belief that the Products have qualities that it does not have. This is a deceptive business practice that violates NY GBL §§ 349 & 350.

77. The practices employed by Defendant, namely Defendant's advertisement, promotion, and marketing materials are unfair, deceptive, and misleading and are in violation of NY GBL §§ 349 & 350.

78. Defendant's claims misled Plaintiff and are likely in the future to mislead reasonable consumers. Had Plaintiff and members of the Class known of the true facts about the Products, they would not have purchased the Products and/or paid substantially less for competing product.

79. Defendant's violations proximately caused Plaintiff and other members of the Classes to suffer actual damages in the form of, inter alia, monies spent to purchase the Products, and are entitled to recover such damages, together with equitable and declaratory relief, appropriate damages, including punitive damages, attorneys' fees and costs.

## COUNT II

### Breach of Express Warranty

80. Plaintiff incorporates by reference all preceding paragraphs.

81. Defendant made promises in form of written warranty representing that the Products are accurately described and will perform as promised. Inherent in that promise is

Defendant's representation that the product does not contain any unsuitable chemicals or additives.

82. Defendant further represented that their product is comprised of "All Natural" wood material.

83. The representations above were not "beliefs" or "opinion," and were not "generalized statements of quality not capable of proof or disproof.

84. These representations became part of the bargain and were material to Plaintiff and the Class in the decision to purchase the Product.

85. Plaintiff and the Class relied on Defendant's misrepresentation and justifiably acted in ignorance of the material facts omitted or concealed when they decided to purchase Defendant's Products.

86. Plaintiff relied upon Defendant's expressed warranties regarding its specialized knowledge, expertise, experience, skills, and judgment to properly perform its duties in a manner that would not present an unreasonable risk of harm or place an undue burden upon Plaintiff.

87. Defendant breached the express warranty since the Products are not what it claims to be.

88. As a direct and proximate result of Defendant's breach, Plaintiff and the Class were damaged in the amount to be proven at trial.

## COUNT III

**Breaches of Express Warranty, Implied Warranty of Merchantability and Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq*.**

89. Plaintiff incorporates by reference all preceding paragraphs.

90. At all times relevant hereto Defendant was under a duty imposed by law requiring that a manufacturer's and merchant's product be reasonably fit for the ordinary purposes for which the product is used, and that the product be acceptable in trade for the product description.

91. This implied warranty of merchantability is part of the basis for the bargain between Defendant on the one hand, and Plaintiff and class members on the other.

92. Notwithstanding the aforementioned duty, at the time of delivery, Defendant breached the implied warranty of merchantability in that it failed to perform as described and failed to conform to the standard described by Defendant in its marketing and representation.

93. Defendant knew or should have known that selling such a Product to Plaintiff and class members constituted a breach of the implied warranty of merchantability.

94. As a direct and proximate result of Defendant' breach of the implied warranty of merchantability, Plaintiff and class members bought the Product without knowledge of their non-conformance.

95. As a direct and proximate result of Defendant' breach of the implied warranty of merchantability, Plaintiff and class members purchased Products which could not be used for their intended purpose.

96. As a direct and proximate result of Defendant' breach of the implied warranty of merchantability, Plaintiff and class members have suffered damages and did not receive the benefit of their bargain.

97. Plaintiff provided or will provide notice to defendant, its agents, representatives, retailers and their employees.

98. Defendant received notice and should have been aware of these misrepresentations due to numerous complaints by consumers to its main office over the past several years regarding the Product, of the type described here.

99. Defendant was unjustly enriched by keeping the profits for the Products.

100. As a direct and proximate result of Defendant's breach of the implied warranty of

merchantability, plaintiff and class members have suffered loss.

## COUNT IV

## NEGLIGENT MISREPRESENTATION (All States)

101. Plaintiff incorporates by reference all preceding paragraphs.

102. Defendant, directly or through their agents and employees, made false representations, concealments, and omissions to Plaintiffs and members of the Class.

103. Defendant has failed to fulfill their duties to disclose the material facts in making the representations to Plaintiff and members of the Class.

104. The direct and proximate cause of this failure to disclose was Defendant's negligence and carelessness.

105. Defendant knew or reasonably should have known that the representations were not true. Defendant made and intended the misrepresentations to induce the reliance of Plaintiff and members of the Class.

106. Plaintiff and members of the Class would have acted differently had they not been misled. They would not have paid money, paid less money or purchased an alternative product.

107. Defendant has an obligation to correct the misinformation that was disseminated through their advertising of the Products. By not informing Plaintiffs and members of the Class, Defendant breached their duty. Defendant also profited financially as a result of this breach.

108. Plaintiff and members of the Class relied upon these false representations and omissions by Defendant when purchasing the Products, upon which reliance was justified and reasonably foreseeable.

109. Plaintiff and members of the Class have suffered and continue to suffer economic losses and other general and specific damages, including but not limited to the amounts paid for

Products, and any interest that would have been accrued on all those monies, the specific amount to be determined at trial.

110. Defendant acted with intent to defraud, or with reckless or negligent disregard of the rights of Plaintiff and members of the Class.

111. Plaintiffs and members of the Class are entitled to punitive damages.

## COUNT V

## FRAUD

112. Plaintiff incorporates by reference all preceding paragraphs.

113. Defendant intentionally made materially false and misleading representations regarding the Products.

114. Plaintiff and members of the Class were induced by, and relied on, Defendant's false and misleading packaging, representations and omissions and did not know at the time that they were purchasing the Products that did not perform as claimed.

115. Defendant knew or should have known of their false and misleading labeling, packaging and misrepresentations and omissions. Nevertheless, Defendant continued to promote and market the products in a deceptive and misleading manner to induce customers to purchase the Product.

116. As a proximate result of Defendant's conduct, Plaintiff and members of the Class suffered damages in an amount to be determined at trial.

## COUNT VI

## UNJUST ENRICHMENT

117. Plaintiff incorporates by reference all preceding paragraphs.

118. Defendant received proceeds from their sale of the goods, which were purchased

by Plaintiff and the Class for an amount far greater than the reasonable value because the Product did not conform to the description and did not perform as promised.

119. Plaintiff and the Class reasonably believed that the Defendant's goods would function as advertised and warranted, and did not know, nor could have known, that the Product would not perform as promised at the time of purchase.

120. Defendant knows of and appreciates the benefit conferred by Plaintiff and the Class and has retained the benefit notwithstanding their knowledge that the benefit is unjust.

121. It is against equity and good conscience to permit Defendant to retain the ill-gotten benefits received from Plaintiffs and the Class given that products were not what Defendant purported them to be.

122. It would be unjust and inequitable for Defendant to retain the benefit, warranting disgorgement to Plaintiff and the Class of all monies paid for the products, and/or all monies paid for which Plaintiffs and the Class did not receive benefit.

## **Prayer for Relief**

WHEREFORE, Plaintiffs, individually and on behalf of all members of the Class, pray for judgment as follows:

    A. Certifying the proposed Class as requested herein;

    B. Declaring that Defendant is financially responsible for notifying the Class members of the pendency of this suit;

    C. Declaring that Defendant has committed the violations of law alleged herein;

    D. Providing for any and all injunctive relief the Court deems appropriate;

    E. Awarding statutory damages in the maximum amount for which the law

provides;

F. Awarding monetary damages, including but not limited to any compensatory, incidental, or consequential damages in an amount that the Court or jury will determine, in accordance with applicable law;

G. Providing for any and all equitable monetary relief the Court deems appropriate;

H. Awarding punitive or exemplary damages in accordance with proof and in an amount consistent with applicable precedent;

I. Awarding Plaintiffs their reasonable costs and expenses of suit, including attorneys' fees;

J. Awarding pre- and post-judgment interest to the extent the law allows; and

K. For such further relief as this Court may deem just and proper.

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs hereby demand a trial by jury on all claims so triable.

Dated: January 21, 2021                                   Respectfully submitted,

                                                                                                          */s/ James Chung*

LAW OFFICE OF JAMES CHUNG
James Chung
43-22 216th Street
Bayside, NY 11361
Telephone: (718) 461-8808
Facsimile: (929) 381-1019
*jchung_77@msn.com*

SHEEHAN & ASSOCIATES, P.C.
Spencer Sheehan

60 Cutter Mill Road, Suite 409
Great Neck, NY 11021
Telephone: (516) 303-0552
Facsimile:(516)234-7800
*spencer@spencersheehan.com*

*Attorneys for Plaintiff*